ALBANY,
October, 1830.

TURNER *vs.* BURROWS.

A part owner may insure his individual interest in a vessel without specify-
ing that interest; it is sufficient if he has an insurable interest to the
amount in question.

If it clearly appears that the owner who effected insurance did it on joint ac-
count, and the language of the policy is *for account of whom it may concern*,
or *for account of the owners*, any one having an interest in the vessel insur-
ed may claim the benefit of the policy; but where the policy contains no
words importing interest in any other than the person effecting it, none
but himself can claim the benefit of the policy.

Where a policy of insurance was executed *in blank*, as thus: "A. B. on ac-
count of      do      make insurance," &c. *it was held*, that parol evi-
dence of the usage of underwriters and of mercantile understanding for
the purpose of giving construction and meaning to the policy was inad-
missible.

THIS was an action of assumpsit, tried at the New-York
circuit in June, 1829, before the Hon. OGDEN EDWARDS, one
of the circuit judges.

The declaration contained the common money counts.
The plaintiff claimed to recover *one sixth* of the amount of
monies received by the defendant under a policy of insurance
on a brig in which they were jointly interested, the plaintiff
owning *one sixth* and the defendant *five sixths* of the vessel.
She was insured on a voyage from New-York to Carthagena,
was lost, and the loss paid to the defendant. On the 17th
January, 1827, the defendant being the sole owner of the
brig *Burrows*, transferred one sixth part of her to the plain-
tiff for the consideration of $1608. The defendant was the
ship's husband. On the 19th January, 1827, the defendant
made application to the Niagara Insurance Company in
writing for insurance upon the brig in these words: "Eight
thousand dollars insurance on brig Burrows, Turner mas-
ter, valued at *my interest* eight thousand $ to, at and from
New-York and Carthagena; she is nearly loaded, and ex-
pects to sail wednesday next if ready." The words *my in-
terest* were partly blotted out or obliterated. On the same
day a policy was underwritten by the company, to whom the
application was made, on the brig at $8000. Many *blanks*

ALBANY,
October, 1830.

Turner
v.
Burrows.

in the policy were left unfilled; it commences thus: "By the Niagara Insurance Company of New-York. Silas E. Burrows, on account of          do          make insurance, and cause          to be insured, lost or not lost, at and from New-York," &c.   On 28th March, 1827, the defendant gave notice to the company of the loss of the vessel, and abandoned vessel, freight and cargo, stating the vessel to have been insured at $8000, the freight at $1000, and the cargo at $1011.   The company paid the whole sum of $8000 insured on the vessel to the  defendant, although they had notice previous to such payment that the plaintiff claimed to be entitled to *one sixth* of the amount.

The president of the insurance company testified that while the application for the payment of the loss was pending, he was present at a conversation between the parties, in which the plaintiff insisted that one sixth of the insurance had been effected on his account, and so notified the company; that the plaintiff admitted that he had not given orders to the defendant to make insurance on the vessel, and that the defendant then made an offer to the plaintiff, if he would consider himself as interested in one sixth in the vessel, cargo and freight, as was originally intended, he would settle with him on that basis; to which the plaintiff objected, insisting that he was interested in one sixth of the vessel only.   The plaintiff did not deny the original intention as stated by the defendant, nor did he admit it.   The insurance broker, who was employed by the defendant to adjust his claims upon the company, testified that having discovered from the papers that the plaintiff had an interest in the vessel, he mentioned it to the defendant, who said that his *original intention was to cover the plaintiff's interest* as well as his own.   On his cross-examination, he stated that the defendant told him, that at the time of effecting the insurance, *he intended to cover the plaintiff's interest,* but that the plaintiff had disavowed being concerned in the cargo; he, the witness, saw from the documents that there was a loss on the cargo nearly total, thought it exceeded $1500; he understood from the defendant that he was the ship's husband and had the sole management; the defendant complained that

the plaintiff had refused to come in and bear a part of the loss on the cargo; that the plaintiff had disavowed or disowned having any thing to do with the cargo, and would not settle with him on that basis; that the insurance company understood the thing between the plaintiff and him and would pay him; that he was willing to account to the plaintiff for one sixth of the insurance on the vessel, if the plaintiff would bear his part of the loss on the cargo. He further stated that the defendant no doubt rested under the belief that the plaintiff was concerned in the cargo, and thought that he always contended that the plaintiff was to have an interest of one sixth of the cargo; he complained that the plaintiff would not take it, but made no impression upon the mind of him, the witness, that the plaintiff was bound by any contract to take part of the cargo; but when the defendant made the insurance, he, the witness, thought he did it under the impression that the plaintiff was to take one sixth of the cargo. The plaintiff proved a letter of the defendant, in which he acknowledged that five sixths of the cargo belonged to himself, and the remaining sixth to the captain of the vessel, a son of the plaintiff, to oblige whom the plaintiff had bought the sixth of the vessel.

The plaintiff offered to prove that it is a common usage for insurance companies to underwrite policies *in blank* similar to the policy given in evidence in this case, and that the universal understanding of the companies and of the mercantile community is, that such a policy is tantamount to a policy containing the words, "for account of whom it may concern," and that when a policy is so made it is understood that the party effecting the insurance is to shew when a loss is claimed, for whose account the insurance was made, and that the underwriters pay according to the interest so shewn; which evidence was objected to, and refused to be received: whereupon, no further evidence being offered on the part of the plaintiff, the counsel for the defendant moved for a nonsuit, which was granted. The plaintiff tendered his bill of exceptions, and now asked for a new trial.

*J. L. Wendell,* for plaintiff, Independent of the evidence offered to supply the omission in the policy of the name of

the assured, the plaintiff was entitled to recover. The parties were jointly interested in the vessel insured, and the evidence conclusively shews that though the insurance was effected by the defendant, it was for the joint benefit of both parties. This appears as well from the acknowledgments of the defendant as from the offers made by him to the plaintiff, which can be accounted for upon no other principle than that it was the mutual understanding of the parties that the insurance should be effected as well for the benefit of the plaintiff as of the defendant, notwithstanding the admission of the plaintiff that he had given no orders to have the insurance effected. It therefore appearing that the plaintiff had an interest in the vessel; that at the time of effcting the insurance the defendant *intended* to cover that interest; that the loss had been paid by the company, and that the money had been received by the defendant, the plaintiff shewed a perfect right to recover, without producing the policy.

The evidence of usage and of the understanding in insurance companies and merchants in relation to policies executed *in blank*, although admissible, was unnecessary to the maintenance of this action, the plaintiff having already proved that he was *intended* to be insured. Such evidence is always proper when from the instrument itself it does not appear who is the person intended to be insured, as where the policy is for the benefit of the *owners* or for *whom it may concern; Catlett and Keith* v. *The Pacific Ins. Co.*, 1 *Wendell*, 561, confirmed in the court for correction of errors, 4 *Wendell*, 75; and if in those cases it may be averred and proved who is the person interested, why should not similar proof be admissible when the policy is *in blank?* Neither in the latter case nor in the former cases does the evidence contradict or vary the written instrument; on the contrary, it renders intelligible and gives effect to that which otherwise would be a nullity. Had an action been brought against the insurance company for the recovery of the loss, the persons interested in the insurance must have been averred, and a variance between the averment and proof would have been fatal, whether such variance was shewn on the part of the plaintiff or of the defendant, 2 *Phil. Ev.* 52; 16 *East*, 141; 5 *Taunton,*

101 ; 6 *id.* 14 ; 1 *Marsh.* 416 ; so that in this case, to have sustained an action against the company, it would have been necessary to have brought the suit in the joint names of Turner and Burrows.

Parol evidence is inadmissible to contradict, alter or vary a written instrument ; but it may be received to *supply an omission* in an instrument not required by law, as by the statute of frauds or wills, to be in *writing.* When offered to supply an omission, it does not usurp the authority of the written instrument ; it is the instrument still which operates ; the oral testimony does no more than assist its operation by pointing out and connecting it with the subject matter. An instrument in itself defective and inoperative may be confirmed by oral testimony, and operate in *conjunction* with it ; and it has accordingly been held, that where in a *bishop's* register a blank was left for the name of the *patron,* it might be supplied by parol evidence. 1 *Wils.* 215. So it is said that the name of the *assured,* omitted in a policy of insurance, may be supplied by parol proof. 1 *Wentworth's Pl.* 409. See also 3 *Starkie's Ev.* 1001, 1016, 1020, 1037, 1047, 1055 ; 1 *Phil. Ev.* 476.

*Ogden Hoffman,* for defendant. The defendant had an insurable interest in the vessel to the full value of the sum insured ; his five sixths, at the rate of valuation at which the one sixth was sold to the plaintiff, amounted to upwards of $8000, the sum at which the vessel was insured. A joint owner of a vessel may insure his own share, and is entitled to recover in proportion to the quantum of interest he proves at the trial. 11 *Johns. R.* 302. *Phil. on Ins.* 60. 4 *Mass. Rep.* 82. 12 *id.* 80. The insurance here was effected by the defendant on his own account, as he had a right to do, 1 *Caines,* 276. 2 *id.* 203. The plaintiff admitted that he had never given orders to have insurance effected on his account ; and why is he entitled to demand a proportion of the loss received from the insurance company ? As part owner, he was under no obligation to insure the interest of the plaintiff, nor did his character of ship's husband impose that duty upon him. 5 *Burr. R.* 2727. He offered upon

certain conditions to permit the plaintiff to participate with him in the insurance, but such offer was refused by the plaintiff, and, besides, was voluntary and without consideration. This case is not like that of *Catlett & Keith* v. *The Pacific Ins. Co.*, where the insurance was *on account of the owners ;* no such words are found in this policy ; on the contrary, the name of the defendant alone is found there ; he had an interest equal to the sum insured, and there is no allusion to any other person for whose benefit the insurance is effected. The *intention* of the defendant relied on by the plaintiff can have no effect upon the contract. 2 *Cranch,* 419.

The evidence of usage and mercantile understanding offered by the plaintiff was inadmissible. Such evidence is proper for the purpose of annexing incidents to the terms used in written instruments, but will not be received to alter, contradict or vary them. In the case of *The New-York Insurance Company* v. *Thomas,* 3 *Johns. Cases,* 1, it was held that parol evidence of the intention of the parties varying the legal effect and operation of a policy of insurance was improper. The counsel also cited 2 *Burr.* 1216, and 10 *Mass. R.* 26.

*By the Court,* SAVAGE, Ch. J.    The plaintiff had no interest in the policy of insurance effected by the defendant. It is well settled in this state that a part owner may insure his individual interest without specifying that interest ; it is sufficient if he has an insurable interest to the amount in question. 1 *Caines,* 284.    2 *id.* 203.    If, indeed, it clearly appears that the owner who effected insurance did it on joint account, and the language of the policy is *for account of whom it may concern,* or *of the owners,* then every person having an interest may claim the benefit of the policy, but no one can recover for more than the interest which he proves.    The amount insured in this case is the precise value, or nearly so, of the defendant's interest in the brig, at the same rate at which he sold one sixth to the plaintiff.    The policy contains no words importing any interest in any other but the defendant ; the plaintiff had given the defendant no orders to insure ; and the declarations of the defendant that he originally intended the insurance for both, were coupled with a condition, provid-

ed the plaintiff was also interested in the cargo. Taking all the expressions of the defendant together, it seems to me they do not prove an insurance by him for the plaintiff's benefit, unless the plaintiff was also concerned in the cargo ; and this the plaintiff declined. I am of opinion, therefore, that the evidence offered did not justify a verdict in favor of the plaintiff. The judge therefore decided correctly.

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

The judge was also correct in excluding parol evidence of the understanding of merchants as to the construction and meaning of the policy. It is a good general principle that written agreements ought to be expounded by themselves. " I know no rule better established," said Kent, justice, in *N. Y. Ins. Co.* v. *Thomas, 3 Johns. C.* 4, " than that parol evidence shall not be admitted to disannul or substantially vary or extend a written contract."

The judge was correct on both points, and the motion to set aside the nonsuit should be denied.