By the Court. Woodruff, J.
It was the duly of the plaintiff to deliver to the Company a just and true account of his loss, which should be as particular as the nature of the case would *514 admit, and should be verified by his oath. This he attempted to do. This was a part of his preliminary proofs. Such delivery was a condition precedent to his right to recover. By express condition, the amount of loss is not payable until sixty days after such account (with other proofs) .is delivered. The defendants made no objection to the sufficiency of the account furnished, and by their answer have acquiesced in its truth. They rested upon the claim that if the facts so stated and sworn to are true, they are not liable. The plaintiff could not therefore, on the trial, change his ground, by impeaching the truth of his own statement. The defendants had a right to take the facts as he stated them. They have been furnished with no other. Had any other been delivered, they would have been entitled to sixty days for examination, and then might, in their defence, have relied upon showing that the plaintiff’s loss was not truly stated. We are therefore of opinion that in regard to the material facts stated by the plaintiff, in his affidavit of loss, &c., he is, certainly for the purposes of the trial of this action and its decision,- concluded by that affidavit.
Under that view of the plaintiff’s position before the Court, the testimony of the witness, Clark, is to be rejected unless it harmonizes with the plaintiff’s statement; but so far as such harmony exists it may properly be taken into view; and to that extent, at least, it was properly received in evidence. It is no valid objection to his testimony, that it more fully explains the relations existing between himself and the plaintiff, in that firm of “ Irving & Clark,” who are stated, by the plaintiff, to be the firm by which the property was manufactured and possessed, or that it tends to show in whgt sense the property insured by the plaintiff was his property, although manufactured and possessed by Irving & Clark.
Read together, the affidavit of the plaintiff and the testimony of Clark show that Irving, having capital and stock in trade, as a cabinet manufacturer, received Clark into connection with him, upon an understanding that he should have one half the profits, the whole capital being furnished by the plaintiff, and the whole property belonging to him, subject only to Clark’s claim to such half of the profits of the business; and under this arrangement, the business was done in their joint names as “ Irving & Clark.”
*515 Such were their relations when the insurance now in question was effected. They were ostensibly partners. The property had been manufactured under their firm name of Irving & Clark, and was in their joint possession. But the plaintiff owned the whole capital, and on a settlement with him for such capital and advances, the whole property and assets of the firm must necessarily be applied to his benefit, so that in a practical sense Clark had no interest in the property itself, though he. might be entitled to share the profits of its employment, and his testimony shows that he so understood it. His testimony, therefore, confirms the affidavit of the plaintiff. The only difference between the testimony of the witness, Clark, and the affidavit of the plaintiff, seems to be that, according to Clark’s understanding of the subject, although they entered into a verbal agreement to form a partnership, and actually carried on business under the name of Irving & Clark, and so became, as “ to the world,” co-partners, yet that in truth such agreement was never consummated by the actual formation of a copartnership, but “ all thoughts of it were abandoned before the witness went to California;” and therefore, inasmuch as the property was all put into the business by the plaintiff, and was due to him in reimbursement, the witness had no interest in it.—While the plaintiff, in his affidavit, regards the firm as an actually subsisting firm, the property of which was all due to him for his advances or contributions thereto, without, on his part, attempting to define the terms of his agreement with Clark, so as to say whether Clark was interested in the property, or in the profits only, If they differ, it is rather in their views of the legal effect of their arrangement, than in the facts themselves:
The plaintiff was then in fact the substantial owner of the property insured. He was in possession and had a legal title, and his equitable interest covered the whole property. This seems to us sufficient to answer the description, “ his stock,” &c., in the policy.
There was no other property on the premises; there was, therefore, nothing else which could be described by the terms, “ his stock.” It was not denied on the argument, that had the language of the policy been “the stock, &c.,” the plaintiff’s interest in the stock would have been protected by the policy. We *516 think it would be too rigid a construction to say, when there is no other stock to which the policy can apply, that “ his stock ” may not mean the stock in which he is interested to the whole amount and value thereof, because another may be or is entitled to see that it is rightly appropriated to satisfy the plaintiff’s interest.
The stock lost was the stock of goods in the store, or ware-room, described in the policy. It is to be assumed that the Company knew what goods they were insuring. There can be no possible doubt that the plaintiff intended to effect insurance, and the defendants intended to insure the very property which was destroyed. We deem it most conducive to justice to give effect to that intention, if we can do so without violating the rules of law.
If there was no misrepresentation and no concealment which should vitiate the policy, no rule of law forbids our construing the words, “his stock,” according to the substantial interest of the plaintiff in the property.
The general rule on this subject is, that the assured is not bound to disclose the nature of his interest—whether legal or, equitable, whether a distinct or an undivided share—unless such disclosure is material to the risk.—2 Duer on Ins., p. 448; L. 13, § 44; Lawrence v. Van Horn, 1 Caines, 284. How, whether the property was “ his,” (the plaintiff’s) at law, or in equity, was quite immaterial. The plaintiff had the same motive to its preservation. Ho effectual double, or over-insurance could be had to their prejudice.
This subject is discussed in Niblo v. The North Am. Fire Ins. Co., 1 Sandford S. 0. Rep. 551, and it is there held, that a tenant who insures “ his buildings,” may recover to the extent of his interest therein, though he have but a term for one year, subject to the payment of.rent—that the description in the policy “his buildings,” is not equivalent to a warranty on the part of the assured that he is the owner, nor does it constitute a material misrepresentation—that where no inquiry is made, he will in such case recover according to his real interest, whether it is absolute or qualified.
That case and others cited in the opinion have a very important if not conclusive bearing upon the case before us; they show *517 that the word “Ms,” is not necessarily to be construed as importing absolute legal title, and may not be satisfied in any other manner.
It must, we think, be conceded that when there is an insurance of a person upon “ his stock of goods,” in a specified store, and it appears not only that he is carrying on business there as a sole trader, but that other business is carried on in the same store by himself, and another as co-partners, the insurance must be confined to the goods pertaimng to Ms sole and separate business; but that concession, we tMnk, does not conflict with the conclusion, that where the only property answering the description in the policy, i. e. the only goods upon the premises, are his in the sense disclosed by the proof in this cause, the policy shall be held to relate to them. The Court should give effect to the contract, rather than that it should fail. The Court can do tMs, as we think, and effectuate the actual design of the parties without contradicting the terms of the policy, or doing violence to its language.
It was suggested that this view of the plaintiff’s right is forbidden by the condition in the policy, that “ if the interest in the property be a leasehold interest, or other interest, not absolute, it must be so represented to the Company, and expressed in the policy in writing, or otherwise the insurance shall be void.” We tMnk not. The plaintiff’s interest, whether legal or equitable, is an absolute interest; it is not contingent. He had a clear right to have the whole property, applied to his use at the time the insurance was effected. It was his, in Ms own right—not in trust for any other. The condition is not, that if his interest is equitable, it must be disclosed; an equitable interest may be in its nature as absolute as a legal title.
Upon tMs view of the construction of the policy, and the rights of the plaintiff under the facts proved, we think the plaintiffs interest was protected by the policy, and that he should have a reference to determine the amount of loss pursuant to the stipulation at the trial.
In what has been said, we are not tobe understood as deciding that even if the property destroyed belonged in a more enlarged sense to the firm of “Irving & Clark,” and the interest of the plaintiff therein was not explained any further than is stated in *518 the plaintiff’s affidavit, he could not recover to the extent of his interest.
That one of two parties may insure his interest in the joint stock was not, and cannot he denied. And if one partner insures in his own name only, it will protect his undivided interest in the partnership, and that only. (Graves v. Bost. Mu. In. Co., 2 Cranch, 419 ; Dumas v. Jones, 4 Mass. 647.) Where there are general words which will admit of application to an alleged intent to insure the joint interest, though the policy he in the name of one only, extrinsic proof may be given to show whether the insurance was intended by the assured party to cover his interest solely, or that of his partners also. (Lawrence and Whitney v. Van Horne et al, 1 Caines, 284; Lawrence v. Sebor, 2 Caines, 203.)
The case of The Pacific Ins. Co. v. Catlett, 4 Wend. 75, (S. C.1 Wend. 561,) appears to us to apply with great significance to this case. There was an insurance in terms “on account of the owners” on vessel and on cargo; and the plaintiffs were held entitled to recover the full sum insured, although it appeared that the plaintiffs (by whose orders the insurance was effected) owned only five-sixths, (see S. C., 1 Paine, U. S. Dist. Ct. R.)
The subject is elaborately discussed in 2 Duer on Ins. p. 24, &c., Lee. 9, § 20, § 31, and notes HI. and IV"., p. 74 and 83, and cases reviewed. It is shown that it is not necessary that the nature of the interest of the assured be set forth in the policy, and that an undivided interest in joint property, may be insured without a specific description of it in the policy as joint or undivided. To the latter effect, is the case cited from 1st and 4th Wendell supra.
Chancellor Kent refers to Valin and Boulay Paty as authority on the Continent of Europe, that where a partner insures partnership property as his goods, the insurance covers the whole interest of the firm, while in this country it is deemed that where the insurance is expressed to be on his sole account, it protects his individual share only. (See 3 Kent, 258, 2 Duer on Ins. 22-4, § 19, &c.;) and see Turner v. Burrows, 5 Wend. 541, 8 id. 144; Burgher et al. v. The Columbian Ins. Co., 17 Barb. 274.) The case last cited, was considered in the Court of Appeals, and the views expressed in the Supreme Court, so far as they bear on the pre *519 sent case, are reiterated in the opinion pronounced in that Court. So far as applicable they tend to sustain the right of the plaintiff herein to recover upon the policy as a protection to his interest in the subject insured. (See opinion of Mr. Justice Hand, MSS.)
The principles thus stated, and especially the cases of Niblo v. The North Am. Ins. Co. and Pacific Ins. Co. v. Catlett, we think, warrant the conclusion, that where the insurance is effected in good faith, without fraud or misrepresentation, with intent to protect the assured, upon goods described as his goods in a particular store, there being no other goods on the premises, the interest of the assured will be protected thereby, notwithstanding another person has also an interest in the same goods as co-partner. And this view ought more clearly to prevail, when, as in the present case, the interest of such co-partner is only nominal, the assured being in truth, the substantial and beneficial owner.
We add, in conclusion, that there is one other aspect of the interest of Clark in the business of the firm of Irving & Clark, which relieves the plaintiff’s title from embarrassment or doubt. His testimony tends in some degree to the conclusion, that the terms of the co-partnership arrangement did not contemplate the acquisition by him of any interest in the capital stock as owner, but only secured to him a share of the net profits when realized. Such an arrangement is not inconsistent with the affidavit of the plaintiff. Although such an arrangement would entitle Clark to require the appropriation of the property to the joint use, so far as to realize the profits he was to share, still, we think, that under such an arrangement, Clark could not assert title in the property itself, and if not, then of course, the property was rightly described by the plaintiff in the policy as “ his stock.”
The verdict must be sustained, anda reference must be ordered to determine the amount of the loss in accordance with the consent given at the trial.-