## The Commercial Insurance Company of Chicago

*v.*

## Lehman Huckberger *et al.*

1. Insurance—*preliminary statement of loss—whether conclusive.* It has been held by this court that, where a party, in making an account of his loss under an insurance, to be submitted with the preliminary proofs, omits any article therefrom, even by inadvertence, he will be concluded thereby, if the company settles the loss promptly according to the account exhibited; but if the assured is compelled to resort to his action to obtain justice, he may prove the loss of any article inadvertently omitted from his account.

2. Same—*statement of assured under oath, respecting loss—whether conclusive.* Where the assured, besides the preliminary proofs, is required to submit to an examination under oath, touching the condition of his affairs as connected with the insurance, and upon such examination the company withhold his books of account from him, so that he must speak from memory alone, if he make a mistake in his statement he will not be concluded thereby, but it will be open to correction.

Appeal from the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

This was an action brought by Huckberger and others, against the Commercial Insurance Company of Chicago, to recover upon a policy of insurance upon the stock of goods of the plaintiffs. A trial resulted in a verdict and judgment for the plaintiffs. The defendants appealed.

Mr. O. B. Sansum, for the appellants.

Messrs. Storrs & Wilson, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

There is no important point of law raised on this record. It is very voluminous, but consists almost entirely of facts, which we have carefully examined. That they make a mass of testimony, more or less conflicting, is nothing more than should be expected in an insurance case, when the effort is made to establish fraudulent conduct upon the assured, and to hold that party up to the public as an incendiary. In such a case, when such an effort is made, we know of no organized body more capable of investigating and arriving at the truth, than a jury of twelve men, selected for their probity and general intelligence, and restrained by the solemn oaths they have taken from indulging in prejudice, or acting from passion, or from unworthy motives. The charge of incendiarism and of perjury was freely made by the appellants—a charge of the most serious character, every step in which the most indifferent jury would watch with the most intense and searching scrutiny. The most liberal course of examination was permitted them. Every argument was used, no doubt, to bring the minds of the jury in accord and sympathy with the defendant company, but they, on their oaths, have said the plaintiffs and their witnesses were worthy of belief, and their claim to the damages allowed them rested on a solid basis, and we cannot gainsay it. There never was, or can be, a case more especially adapted to the consideration of a jury, than this, and the court called upon to review their action must see most clearly that they have either mistaken the evidence or come to conclusions so opposed to the whole tenor of it, as to warrant the belief that passion or prejudice has swayed them, and not their own deliberate judgments. This, it is impossible for us to say.

A point is made by appellants on the modification by the court of one of appellants' instructions.

To understand the applicability of the modification, it is only necessary to advert to the fact that, besides the preliminary proofs the assured were required to furnish, they were also required to submit to an examination under oath, touching the condition of their trade, amount of stock, &c. when, at the same time, the underwriters had possession of their books, which compelled them to speak from memory, without an opportunity of refreshing their recollection by the books. The court, under this state of case, told the jury if they believed from the evidence that the plaintiffs did not make fair, honest, and true statements in this respect, and that this was done intentionally, then there was not a compliance with the terms of the policy. The point is, as appellants contend, that it makes no difference whether it was intentional or not; that the only question for the jury was, were the statements true or false? and reference is made to *Campbell* v. *Charter Oak Fire & Marine Insurance Co.* 10 Allen, 213, and to *Irving* v. *Excelsior Fire Insurance Co.* 1 Bosw. (C. P.) 507.

Both those cases refer to the condition in a policy against fire, that the assured shall deliver to the company, as a part of the preliminary proofs, a just and true account of his loss, and it was held the delivery of this account was a condition precedent to the maintenance of an action for the recovery of the loss, and that, upon the trial, the assured could not make proof of a different account; that he must be bound by the statement first made.

This court held, in the case of the *Ætna Insurance Co.* v. *Stevens*, 48 Ill. 31, that when the assured had been compelled to bring suit for the loss, he had a right to prove the value of articles, which, by mere inadvertence, had been omitted from his account submitted with the preliminary proofs. And, on reflection, we are satisfied there is justice in this. If the insurance company settle a loss promptly, according to the account exhibited, there being no pretense of fraud, the assured should be bound by it. If, however, the assured is compelled to resort to an action to obtain justice, then he should be

permitted to prove the loss of any article he may, from inadvertence, have omitted from his account. But the question in this case was not in regard to the account accompanying the preliminary proofs of loss. It arose on their examination under oath in the absence of their books of account. Common justice would demand that a mistake made under such circumstances should be open to correction.

Giving the seventh instruction for appellees—it is noted as eighth in appellant's brief—is complained of as wanting evidence on which to base it. There was evidence that Rosenfeldt and Hill were at the store acting as appraisers, and that Rosenfeldt appeared on the part of the assured, and Hill for the several companies who had taken risks in the concern. There was no proof that appellants ever consented to pay either of them for their services, yet there was sufficient shown that they were not meddling in the business without authority.

As to the jury disregarding the instructions of the court, we cannot see wherein. The only trouble is, the jury did not look at the facts with the eyes of appellants' counsel, nor were they influenced by his peculiar opinions. They did not believe that appellees' statements were contradictory in material points, and therefore did not feel justified in rejecting them. It is evident the jury gave full credence to the plaintiffs' testimony and to their witnesses, and we cannot well see why they should not have done so.

Instructions as favorable to the appellants as they had any right to ask, were given by the court. The evidence sustains the verdict, and the judgment thereon must be affirmed.

*Judgment affirmed.*